UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SYAQUA AMERICAS, INC., a
Florida corporation,

    Plaintiff,

v.                            Case No: 2:20-cv-736-JES-MRM

AMERICAN MARICULTURE, INC.,
a Florida corporation,
AMERICAN PENAEID, INC., a
Florida corporation, ROBIN
PEARL, ADVANCED HATCHERY
TECHNOLOGY, INC., CHARLES
T. TUAN, JINYUAN WU and
BERRY AMRU EMIRZA,

    Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Motion to Dismiss the Amended Complaint (Doc. #64) filed on December 7, 2020. Plaintiff filed a Response in Opposition (Doc. #67) on December 21, 2020. For the reasons set forth below, the motion is granted in part and denied in part as moot.

**I.**

Plaintiff Syaqua Americas, Inc. initiated this matter in September 2020 and filed an Amended Verified Complaint for Injunctive and Other Relief Including Declaratory Judgment (Doc. #27) ("Amended Verified Complaint") on October 16, 2020 against

defendants American Mariculture, Inc. ("AMI"), American Penaeid, Inc. ("API"), Robin Pearl ("Pearl"), Advanced Hatchery Technology, Inc., Charles T. Tuan, Jinyuan Wu, and Berry Amru Emirza. Boiled down to the essentials, the Amended Verified Complaint alleges plaintiff developed genetically engineered broodstock shrimp and entered into agreements with several defendants to farm the shrimp for eventual sale to markets in Asia. Plaintiff alleges these defendants and/or their agents breached the agreements, misappropriated the genetic material, and created their own genetic lines of shrimp.

Plaintiff asserts the following claims amongst the various defendants: (1) trade secret misappropriation in violation of 18 U.S.C. § 1836; (2) trade secret misappropriation in violation of § 688.002 et seq., Fla. Stat.; (3) breach of contract; (4) declaratory relief under 28 U.S.C. § 2201; (5) constructive trust; (6) unfair competition in violation of 15 U.S.C. § 1125; (7) unfair competition in violation of § 501.201 et seq., Fla. Stat.; (8) conspiracy; (9) tortious interference with business expectancy/prospective economic advantage; (10) tortious interference with a contract; and (11) breach of the duty of good faith and fair dealing. (Id. pp. 59-79.)

On December 7, 2020, AMI, API, and Pearl (collectively, "the AMI defendants") filed the motion currently before the Court. (Doc. #64.) In it, the AMI defendants argue, *inter alia*, that the

2

Amended Verified Complaint should be dismissed because it is a shotgun pleading prohibited by Rule 8 of the Federal Rules of Civil Procedure. (Id. pp. 5-11.) Because the Court agrees, the Amended Verified Complaint will be dismissed with leave to amend and the AMI defendants' remaining arguments for dismissal will be denied without prejudice as moot.

**II.**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Shotgun pleadings violate Rule 8 by "fail[ing] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015) (defining the four types of shotgun pleadings).[1] Courts in

---

[1] The four "rough types or categories" of shotgun pleadings identified by the Eleventh Circuit in Weiland are:

The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims

the Eleventh Circuit have little tolerance for shotgun pleadings. See generally Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1357-58 (11th Cir. 2018) (detailing the unacceptable consequences of shotgun pleading). A district court has the "inherent authority to control its docket and ensure the prompt resolution of lawsuits," which includes the ability to dismiss a complaint on shotgun pleading grounds. Weiland, 792 F.3d at 1320. In a case where a party files a shotgun pleading, a court "should strike the [pleading] and instruct counsel to replead the case—if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)." Jackson, 898 F.3d at 1357-58 (citation omitted).

While Rule 8(a)(2) does not impose a page or paragraph limit, "courts often emphasize the unwieldy length of shotgun pleadings, as well as the number of counts they set forth, primarily because such features tend to contribute to the pleadings' unintelligibility." Jones Creek Invs., LLC v. Columbia Cnty., Ga., 2011 WL 7446782, *3 (S.D. Ga. Dec. 9, 2011). Here, the Amended Verified Complaint "reads more like an evidentiary narrative than a pleading contemplated by the notice pleading

---

against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Weiland, 792 F.3d at 1321-23.

4

standard." Kelsey v. United States, 2018 WL 7021613, *9 n.11 (M.D. Fla. Dec. 14, 2008).

The Amended Verified Complaint is eighty-two pages long, contains 378 paragraphs, and asserts eleven claims against various defendants.[2] The first of the claims does not begin until page fifty-nine at paragraph 269. (Doc. #27, p. 59.) The preceding 268 paragraphs of introductory allegations are then incorporated by reference into each of the eleven counts, and several counts incorporate numerous other paragraphs alleged in previous counts. (Id. ¶¶ 269, 287, 305, 322, 326, 328, 341, 349, 361, 367, 372.) The Amended Verified Complaint also adopts and incorporates "the relevant information, statements, and documents" contained in several pleadings and exhibits filed in a separate case currently before the Court. (Id. ¶ 62 (citing Primo Broodstock, Inc. v. Am. Mariculture, Inc., No. 2:17-cv-9-FtM-29CM)). This alone accounts for nearly 500 additional pages of incorporated information, to go along with the nearly 500 pages of exhibits attached to the Amended Verified Complaint. To say it is burdensome to determine which allegations in the Amended Verified Complaint are relevant to each

---

[2] At least one of the claims is not a standalone cause of action but instead is a remedy. See Allyn v. CNL Lifestyle Props., Inc., 2013 WL 6439383, *7 (M.D. Fla. Nov. 27, 2013) ("A constructive trust is a remedy and not a cause of action."); Collinson v. Miller, 903 So.2d 221, 228 (Fla. 2d DCA 2005) ("A constructive trust . . . is not a traditional cause of action; it is more accurately defined as an equitable remedy.").

of the claims is an understatement.[3] See Kremer v. Lysich, 2020 WL 9454951, *4 (M.D. Fla. June 12, 2020) ("[E]ven if the Court were to consider the 153 introductory allegations as if they were incorporated into each count, Plaintiff's method of pleading still impermissibly leaves the Court with the onerous task of sifting through the unwieldy introduction in search of the allegations which support each cause of action against each Defendant." (marks and citation omitted)); Streeter v. City of Pensacola, 2007 WL 809786, *2 (N.D. Fla. Mar. 15, 2007) ("As currently drafted, the unwieldy and verbose second amended complaint clearly does not present a 'short and plain statement' of plaintiffs' claims, as required by Rule 8. . . . It often repeats the same or similar allegations within a single count and also-again and again-repeats such allegations in subsequent counts of the complaint. Not only does such pleading make it difficult for defendants to fashion a response but it also forces the court to waste precious judicial resources in an effort to determine which facts are material to plaintiffs' claims.").[4]

---

[3] The Court is skeptical of plaintiff's suggestion that every incorporated allegation is germane to every claim. (Doc. #67, p. 6.) For example, the Court doubts the history of the shrimp farming industry is relevant to all of the claims alleged in the Amended Verified Complaint. (Doc. #27, ¶¶ 22-34, 269, 287, 305, 322, 326, 328, 341, 349, 361, 367, 372.)

[4] The Amended Verified Complaint also contains numerous allegations that appear immaterial when alleged in each claim. For example, the pleading provides in-depth backgrounds on the

"Brevity is the soul of wit."  Yeyille v. Miami Dade Cnty. Pub. Schs., 643 F. App'x 882, 884 (11th Cir. 2016).  "In pleading, as in many aspects of life, quality matters more than quantity." Lawrie v. Ginn Dev. Co., LLC, 656 F. App'x 464, 465 (11th Cir. 2016).  Bearing these maxims in mind, plaintiff's next complaint should limit the introductory allegations to those necessary under Rule 8, eliminate all immaterial and irrelevant allegations, and reduce the number of times in which prior allegations are re-alleged and re-asserted.  Furthermore, if plaintiff insists on referring to the Primo case in the next complaint, the Court recommends for the sake of clarity that plaintiff refrain from describing defendants AMI, API and Pearl as "the Primo Defendants." Given there are no parties in this matter named "Primo," such a designation only adds unnecessary confusion.[5]

Accordingly, it is now

**ORDERED:**

---

shrimp farming industry and genetic engineering in shrimp breeding, company information regarding plaintiff and the defendants, and the factual allegations relevant in the Primo case. (Doc. #27, ¶¶ 22-62.) Providing such information and then re-incorporating it into each count contributes to the prolix nature of the Amended Verified Complaint.

[5] Such confusion is demonstrated by the Amended Verified Complaint's continual use of "Primo Defendants" to describe defendants AMI, API and Pearl until Count Ten, when they are referred to as "the AMI Defendants."  (Doc. #27, p. 79.)

7

Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Motion to Dismiss the Amended Complaint (Doc. #64) is **GRANTED in part and DENIED in part as moot**. The Amended Verified Complaint for Injunctive and Other Relief Including Declaratory Judgment (Doc. #27) is **dismissed without prejudice** to filing a Second Amended Verified Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __24th__ day of June, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record