```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

SYAQUA AMERICAS, INC., a
Florida corporation,

      Plaintiff,

v.                                    Case No:  2:20-cv-736-JES-MRM

AMERICAN MARICULTURE, INC.,
a Florida corporation,
AMERICAN PENAEID, INC., a
Florida corporation, ROBIN
PEARL, ADVANCED HATCHERY
TECHNOLOGY, INC., CHARLES
T. TUAN, JINYUAN WU and
BERRY AMRU EMIRZA,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of plaintiff's Motion to Strike Defendants' Jury Demand (Doc. #70) filed on January 5, 2021.  Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl filed a Response in Opposition (Doc. #85) on February 22, 2021, to which plaintiff filed a Reply (Doc. #95) on March 19, 2021.  For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

According to the relevant allegations and exhibits in the Second Amended Verified Complaint for Injunctive and Other Relief Including Declaratory Judgment ("Second Amended Complaint"),

plaintiff SyAqua Americas, Inc. and defendant American Penaeid, Inc. ("API") executed a Memorandum of Understanding ("the Memorandum") in 2016 for API to produce shrimp breeders for plaintiff to export.  (Doc. #105, ¶ 55; Doc. #105-1.)  The Memorandum was signed by defendant Robin Pearl, API's president. (Doc. #105-1, p. 4.)  Per the Second Amended Complaint, API is a wholly owned subsidiary of defendant American Mariculture, Inc. ("AMI"), and Pearl is the president and/or chief executive officer of both corporations.  (Doc. #105, ¶¶ 12-16.)

In 2019, plaintiff and AMI entered into a second agreement, the Production Agreement, for the purpose of producing shrimp for export.  (Doc. #105-3.)  The Production Agreement had an initial five-year term ending in September 2023, but provides either party may terminate for cause.  (Id. pp. 2-3.)  "Cause" is defined as, *inter alia*, an "intentional act of fraud, theft or any other material violation of law," an "intentional disclosure of confidential information," a "breach of any obligation" under the agreement, or an "intentional engagement in any competitive activity which would constitute a breach of duty" under the agreement. (Id. p. 3.)  The agreement contains a jury trial waiver provision, and is signed by Pearl on behalf of AMI.  (Id. pp. 7, 9.)

In March 2020, plaintiff sent AMI notice of AMI's defaults and breaches under the Production Agreement and subsequently

2

terminated the contract with cause in July 2020. (Doc. #105, ¶¶ 138, 141.) Plaintiff initiated this matter in September 2020 and filed the Second Amended Complaint on July 8, 2021 against AMI, API, and Pearl, as well as defendants Advanced Hatchery Technology, Inc., Charles T. Tuan, Jinyuan Wu, and Berry Amru Emirza. In essence the Second Amended Complaint alleges plaintiff developed genetically engineered broodstock shrimp and entered into agreements with AMI, API, and Pearl to farm the shrimp for eventual sale to markets in Asia. Plaintiff alleges these defendants and/or their agents breached the agreements, misappropriated the genetic material, and created their own genetic lines of shrimp.

Plaintiff asserts the following claims against the various defendants: (1) trade secret misappropriation in violation of 18 U.S.C. § 1836; (2) trade secret misappropriation in violation of § 688.002 et seq., Fla. Stat.; (3) breach of contract; (4) declaratory relief under 28 U.S.C. § 2201; (5) unfair competition in violation of 15 U.S.C. § 1125; (6) unfair competition in violation of § 501.201 et seq., Fla. Stat.; (7) tortious interference with business expectancy/prospective economic advantage; (8) tortious interference with a contract; (9) conspiracy; and (10) breach of the duty of good faith and fair dealing. (Id. pp. 29-48.)

In December 2020, AMI, API, and Pearl (collectively, "the AMI defendants") filed a Demand for Jury Trial, requesting "trial by

3

jury on all claims so triable, except that of Breach of Contract relating to the Production Agreement."[1] (Doc. #69, p. 2.) In response, plaintiff filed the instant motion seeking to strike the jury demand, arguing (1) the AMI defendants are bound by the Production Agreement, (2) the Production Agreement contains a jury waiver provision, and (3) the jury waiver provision applies to all claims alleged in the Second Amended Complaint. (Doc. #70.) The AMI defendants disagree, arguing (1) Pearl and API are not bound by the jury waiver because they are not parties to the Production Agreement, (2) the majority of the claims relate to the Memorandum, which does not have a jury waiver provision, and (3) the jury waiver provision in the Production Agreement should be construed narrowly. (Doc. #85.) The matter is now ripe for review.

## II.

"A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." Bakrac, Inc. v. Villager Franchise Sys., Inc., 164 F. App'x 820, 823-24 (11th Cir. 2006) (citing Brookhart v. Janis, 384 U.S. 1, 4-5 (1966)). "[W]hile 'the seventh amendment right is . . . a fundamental one,' courts have recognized that 'it is one that can be knowingly and intentionally waived by contract.'" Aponte v.

---

[1] Count Three of the Second Amended Complaint, the breach of contract claim, is based upon alleged breaches of both the Memorandum and the Production Agreement. (Doc. #105, pp. 36-39.)

4

Brown & Brown of Fla., Inc., 806 F. App'x 824, 827 (11th Cir. 2020) (quoting Leasing Serv. Corp. v. Crane, 804 F.2d 828, 832 (4th Cir. 1986)).  The knowing and voluntary nature of the jury waiver in the Production Agreement is not challenged.  The issues before the Court are (1) which of the AMI defendants are bound by the Production Agreement's jury waiver, and (2) which, if any, of the claims in the Second Amended Complaint fall within the scope of the jury waiver.  The Court will discuss these issues in turn.

**A. Parties Bound by the Waiver**

The only signatories to the Production Agreement, which contains the jury waiver provision, are plaintiff and AMI.[2]  (Doc. #105-3, p. 7, 9.)  The AMI defendants argue that "[a] waiver by one party cannot bind other parties," and therefore plaintiff has failed to demonstrate that API or Pearl waived the right to a trial by jury.  (Doc. #85, pp. 6-7.)  Plaintiff responds that it has clearly alleged in its complaint that the AMI defendants "are one and the same," that AMI and API are Pearl's alter ego, and that API is Pearl and AMI's alter ego.  (Doc. #95, p. 2.)  Plaintiff

---

[2] Pearl signed the Production Agreement on behalf of AMI in his role as president.  See N. Am. Clearing, Inc. v. Brokerage Comput. Sys., Inc., 2009 WL 1513389, *6 (M.D. Fla. May 27, 2009) ("[L]anguage identifying the person signing the document as a corporate officer or something similar . . . does not create personal liability for the person signing a contract to which he or she is not a specified party, unless the contract contains language indicating personal liability or the assumption of personal obligations."  (citation omitted)).

5

further contends that because "the claims against the parent company AMI and its subsidiary API are based on the same facts and are inherently inseparable," the Court may enforce the jury waiver against API. (Id. p. 3.) The Court finds neither of plaintiff's arguments persuasive.

The Second Amended Complaint contains a section dedicated to "ALTER EGO ALLEGATIONS" in which plaintiff alleges, *inter alia*, that AMI is the alter ego of API, and Pearl is the alter ego of both AMI and API. (Doc. #105, pp. 6-7.) Plaintiff suggests that because it has clearly alleged an alter ego relationship, API and Pearl are bound to the Production Agreement signed by AMI. (Doc. #95, p. 2.) The Court disagrees. Even if plaintiff's alter ego allegations are legally sufficient—an issue the Court need not decide at this time—they are still only allegations. Given the fundamental right a defendant has to a jury trial, the Court declines to find API and Pearl are bound by AMI's jury waiver simply due to plaintiff's alter ego allegations.[3]

Plaintiff also asserts that because API is a subsidiary of AMI, the Court may enforce AMI's jury waiver against API. (Doc. #95, p. 3); see also J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988) ("When the

---

[3] If the Court subsequently determines Pearl and API are alter egos of AMI, for example on summary judgment, this issue can be revisited.

6

charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement."). In support, plaintiff cites various cases in which a court found a principal's jury waiver agreement applied to its employees or agents. However, in each of these cases the employees or agents were seeking to *invoke* the waiver agreed to by the principal. See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 225 (3d Cir. 2007) ("[W]e conclude that, when a valid contractual jury trial waiver provision applies to a signatory corporation, the waiver also applies to nonsignatory directors and officers seeking to invoke the waiver as agents of the corporation."); Hamilton v. Sheridan Healthcorp, Inc., 2014 WL 537343, *3 (S.D. Fla. Feb. 11, 2014) ("Where a principal has signed a contract containing a jury waiver clause, its employees and agents may also enforce the waiver with regard to claims arising from acts taking within the scope of their employment or agency."). In contrast, here API and Pearl are seeking to *avoid* the jury waiver, which, as the Third Circuit noted, "is not a 'distinction without a difference.'" Tracinda Corp., 502 F.3d at 224 (distinguishing situations in which non-signatory agents sought to invoke an arbitration agreement entered into by their corporate principal from situations in which non-

7

signatory agents sought to avoid their principal's arbitration agreement).

Having considered the arguments of the parties, the Court finds the record insufficient at this time to determine whether API and Pearl should be bound by AMI's jury waiver in the Production Agreement. Accordingly, the Court will deny without prejudice the motion to strike as to API and Pearl, and focus the remaining analysis as to the claims alleged against AMI.[4]

### B. Claims Within the Scope of the Waiver

Plaintiff has asserted ten claims against AMI: (1) trade secret misappropriation in violation of 18 U.S.C. § 1836; (2) trade secret misappropriation in violation of § 688.002 et seq., Fla. Stat.; (3) breach of contract; (4) declaratory relief under 28 U.S.C. § 2201; (5) unfair competition in violation of 15 U.S.C. § 1125; (6) unfair competition in violation of § 501.201 et seq., Fla. Stat.; (7) tortious interference with business expectancy/prospective economic advantage; (8) tortious interference with a contract; (9) conspiracy; and (10) breach of the duty of good faith and fair dealing. (Doc. #105, pp. 29-48.) As noted, the breach of contract claim alleges breaches of both the Memorandum and the Production Agreement. (Id. pp. 36-38.)

---

[4] As noted, AMI is a party to the Production Agreement and therefore bound by the jury waiver provision. Furthermore, AMI does not argue that its waiver was not knowingly and intentionally.

8

AMI concedes in its demand that it is not entitled to a jury trial on the breach of contract claim relating to the Production Agreement. (Doc. #69, p. 2.) Accordingly, the Court will focus on the remaining claims.

Paragraph 12 of the Production Agreement states, "The parties waive any right to a trial by jury in the event of litigation arising out of this Agreement." (Doc. #105-3, p. 7.) Similar to a clause requiring arbitration, the Court focuses "on whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001).

"The term 'arising out of' is broad, but it is not all encompassing." Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1218 (11th Cir. 2011). Disputes "that are not related-with at least some directness-to performance of duties specified by the contract do not count as disputes 'arising out of' the contract." Telecom Italia, 248 F.3d at 1116. The Florida Supreme Court has held that the term "'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 539 (Fla. 2005) (citation omitted); see also James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008) ("[T]he phrase 'arising out of'

contemplates a more attenuated link than the phrase 'because of.'" (quoting Garcia v. Fed. Ins. Co., 969 So. 2d 288, 293 (Fla. 2007))).

As the jury waiver is limited to litigation "arising out of" the Production Agreement, it is necessary to first examine what the Production Agreement encompasses. Per the agreement, the parties were seeking to have plaintiff produce shrimp breeders at AMI's breeding facility for export. (Doc. #105-3, p. 2.) The agreement provides that "AMI may not sell or use any SyAqua Animals or their offspring as breeders or gametes for their own or other breeding programs," that "AMI will not mix, use or in any other way incorporate any SyAqua genetics with its AMI genetic program," and that "AMI also agrees that SyAqua genetics may not be used by AMI for any breeding program, genetic development, breeders production or breeders sales." (Id. pp. 2, 5.) The latter provision applies during the term of the Production Agreement "and for two years following termination for any cause." (Id. p. 5.) The Production Agreement also contains the following competitive restriction:

> a. Neither of the parties may knowingly or purposely circumvent, or cause the breach of, or undermine an exisiting [sic] breeders sales contract. Both companies are free to offer their breeders on a best effort's basis to existing or potential customers worldwide. Both parties agree to compete in an honest and ethical way. Both parties agree not to disparage or make false claims about each other in any way, while this Agreement is in force and for one year after the Termination Date.

(Id. p. 4.)  As noted, under the agreement either party may terminate for cause, including for the "intentional act of fraud, theft or any other material violation of law," an "intentional disclosure of confidential information," a "breach of any obligation" under the agreement, or an "intentional engagement in any competitive activity which would constitute a breach of duty" under the agreement.  (Id. p. 3.)

    Having reviewed the allegations in the Second Amended Complaint, the Court finds that with one exception, all of the claims arise out of the Production Agreement.  Counts One and Two allege the defendants misappropriated plaintiff's trade secrets in violation of the provisions of the Production Agreement by, *inter alia*, creating genetic lines of shrimp via the unauthorized use of plaintiff's genetics and/or germplasm.  (Doc. #105, ¶¶ 153-59, 171-77.)  Count Four seeks declaratory relief regarding the terms of and obligations under the Production Agreement.  (Id. ¶ 201.)  Counts Five and Six allege the defendants misappropriated plaintiff's trade secrets to unfairly compete with plaintiff, and made false and misleading statements to suggest an association between the defendants and plaintiff's proprietary shrimp broodstock/genetics.  (Id. ¶¶ 204-09, 216-17.)  Count Seven alleges plaintiff has a business expectancy in the Asian broodstock shrimp market given plaintiff's trade secrets, name and reputation, and

that the defendants knowingly interfered with that expectancy. (Id. ¶¶ 224-27.) Similarly, Count Eight alleges the defendants knowingly interfered with plaintiff's contracts with its customers in Asia to provide plaintiff's broodstock shrimp. (Id. ¶¶ 230-32.) Count Nine alleges the defendants conspired to, *inter alia*, misappropriate plaintiff's trade secrets, violate the Production Agreement, and unfairly compete against plaintiff. (Id. ¶¶ 235-39.) Finally, Count Ten alleges the defendants breached the duties of good faith and fair dealing implicit in all enforceable contracts by breaching the express provisions of the Production Agreement. (Id. ¶¶ 247-49.) The Court finds that each of these claims are related to performance of duties specified by the Production Agreement, that the Production Agreement provides a basis for termination that covers the factual allegations underlying the claims, and that each claim arises out of the Production Agreement. Accordingly, the Court finds that each of the above claims falls within the scope of the jury waiver provision of the Production Agreement, and that AMI has waived its right to a jury trial on these claims.

As noted, the Court's ruling applies to all claims with one exception: the breach of contract claim in Count Three. To the extent the claim is based on the breach of the Production Agreement, it clearly arises from the Production Agreement and falls within the scope of the jury waiver. However, Count Three

12

also alleges the defendants breached the Memorandum. (Doc. #105, ¶¶ 185, 188, 191, 193.) The Memorandum does not have a jury waiver, and to the extent AMI can be considered a party to the Memorandum—a determination the Court need not make presently—AMI cannot be said to have waived its right to a jury trial for the alleged breach.[5]

Accordingly, it is hereby

**ORDERED**:

Plaintiff's Motion to Strike Defendants' Jury Demand (Doc. #70) is **GRANTED in part and DENIED in part** as follows:

1. The motion is **denied** without prejudice as to defendants American Penaeid, Inc. and Robin Pearl.

2. The motion is **granted** as to defendant American Mariculture, Inc. as to Counts I, II, IV, V, VI, VII, VIII, IX and X of the Second Amended Verified Complaint for Injunctive and

---

[5] The Production Agreement contains a provision stating it constitutes the entire agreement "and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof." (Doc. #105-3, p. 8.) Plaintiff relies upon this provision to argue the Memorandum's obligations became integrated and governed by the Production Agreement. (Doc. #95, p. 2.) Even if this is true, plaintiff has not alleged the defendants breached the Production Agreement by failing to meet the obligations of the Memorandum; rather, plaintiff has specifically alleged a breach of the Memorandum. Accordingly, the Court finds the jury waiver provision in the Production Agreement does not apply to the alleged breach of the Memorandum.

>   Other Relief Including Declaratory Judgment. The Demand for Jury Trial (Doc. #69) is **stricken** as to defendant American Mariculture, Inc. on these claims.
>
> 3. The motion is **denied** as to defendant American Mariculture, Inc. as to the portion of Count III alleging a breach of the Memorandum of Understanding.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of July, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:   Counsel of Record